Gina M. Stanziale - ID #017201991
METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
stanziale@methwerb.com
Attorneys for Fitchburg Mutual Insurance Company and
The Norfolk & Dedham Group
Our File No.  89297 GMS

| | |
|---|---|
| DEZINE SIX, LLC T/A COSMO BLEU<br><br>        Plaintiff,<br><br>V.<br><br>FITCHBURG MUTUAL INSURANCE COMPANY AND THE NORFOLK & DEDHAM GROUP<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: UNITED STATES DISTRICT - TRENTON<br>CIVIL ACTION NO.: 3:20-CV-07964<br><br><br>Civil Action<br><br>**NOTICE OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. 12(B)(6)** |

**PLEASE TAKE NOTICE** that pursuant to F.R.C.P. 12(b)(6), the undersigned hereby applies for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted.

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Defendants

By: _____
    Gina M. Stanziale, Esq.

DATED: July 28, 2020

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEZINE SIX, LLC T/A COSMO BLEU | CIVIL ACTION NO.: 3:20-CV-07964 |
| Plaintiff, | |
| V. | **AFFIDAVIT OF GINA M. STANZIALE, ESQ.** |
| FITCHBURG MUTUAL INSURANCE COMPANY AND THE NORFOLK & DEDHAM GROUP | |
| Defendants. | |

I, Gina M. Stanziale, Esq., of full age, duly certify as follows:

1.   I am an Attorney at Law in the State of New Jersey and a partner with the law firm of Methfessel & Werbel, attorneys for the defendants, Fitchburg Mutual Insurance Company and the Norfolk and Dedham Group.  In such capacity I am fully familiar with the facts of the within matter.

2.   A true and accurate copy of the Complaint is attached hereto as **Exhibit A**.

3.   A true and accurate copy of the insurance policy to which the Complaint refers is attached hereto as **Exhibit B**.

4.   A true and accurate copy of Governor Murphy's Executive Order No. 104 to which the Complaint refers is attached hereto as **Exhibit C**.

5.    A true and accurate copy of the denial letter to which the Complaint refers is attached hereto as **Exhibit D**.

6.    A true and accurate copy of Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., No. 2:12-cv-04418 (WHW) (CLW), 2014 U.S. Dist. LEXIS 165232 (D.N.J. Nov. 25, 2014) is attached hereto as **Exhibit E**.

I swear under penalty of perjury that the foregoing is true and correct.

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Defendants

By:_____
        Gina M. Stanziale

DATED: July 28, 2020

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEZINE SIX, LLC T/A COSMO BLEU | CIVIL ACTION NO.: 3:20-CV-07964 |
| Plaintiff, | |
| V. | |
| FITCHBURG MUTUAL INSURANCE COMPANY AND THE NORFOLK & DEDHAM GROUP | |
| Defendants. | |

**DEFENDANTS FITCHBURG MUTUAL INSURANCE COMPANY and THE NORFOLK & DEDHAM GROUP'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. 12(B)(6)**

**METHFESSEL & WERBEL, ESQS.**
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
stanziale@methwerb.com
Attorneys for Defendants
Our File No.  89297 GMS

Of Counsel and On the Brief:
Gina M. Stanziale, Esq.
Attorney Bar ID: 017201991

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................... i

TABLE OF AUTHORITIES ................................. ii-v

PRELIMINARY STATEMENT ................................ 1-2

PROCEDURAL HISTORY ..................................... 3

STATEMENT OF FACTS .................................. 4-8

LEGAL ARGUMENT ...................................... 9-33

    I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(B)(6) ....................... 9-11

   II.   PLAINTIFF DID NOT SUSTAIN "DIRECT PHYSICAL LOSS" OR "DAMAGE" TO THE INSURED PREMISES, PRECLUDING BOTH "BUSINESS INCOME" AND "EXTRA EXPENSE" COVERAGE UNDER SUBJECT POLICY OF INSURANCE.................................. 12-23

  III.   PLAINTIFF DID NOT SUSTAIN LOSS AS A CONSEQUENCE OF DAMAGE TO ANY PROPERTY, INCLUDING ANY PROPERTY OTHER THAN PROPERTY AT THE DESCRIBED PREMISES, PRECLUDING "CIVIL AUTHORITY" COVERAGE UNDER THE SUBJECT POLICY OF INSURANCE ................ 24-25

   IV.   THE VIRUS EXCLUSION INDEPENDENTLY BARS COVERAGE BECAUSE THE PLAINTIFF'S LOSS WAS CAUSED AT LEAST INDIRECTLY BY A VIRUS AND IS NOT AGAINST PUBLIC POLICY.................................. 26-31

CONCLUSION ............................................ 32

**TABLE OF AUTHORITIES**

**Cases**                                                        **Page(s)**

Adron, Inc. v. Home Ins. Co.,
    292 N.J. Super. 463 (App. Div. 1996) ................... 9

AFLAC Inc. v. Chubb & Sons, Inc.,
    581 S.E.2d 317 (Ga. Ct. App. 2003) ................... 20

Am. Motorists Ins. Co. v. L-C-A Sales Co.,
    155 N.J. 29 (1998) .................................... 26

Argent v. Brady,
    386 N.J. Super. 343 (App. Div. 2006).................. 10

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................. 8, 9

Assurance Co. of Am., Inc. v. Jay-Mar, Inc.,
    38 F. Supp. 2d 349 (D.N.J. 1999).................... 27-28

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ................................... 8

Cumberland Cty. Improvement Auth. v. GSP Recycling Co., Inc.,
    358 N.J. Super. 484 (App. Div. 2003)................. 22

Cypress Point Condo. Ass'n v. Adria Towers, L.L.C.,
    226 N.J. 403 (2016) ................................. 12

Essex v. BloomSouth Flooring Corp.,
    562 F.3d 399 (1st Cir. 2009)......................... 16

Farmers Ins. Co. of Or. v. Trutanich,
    858 P.2d 1332 (Or. Ct. App. 1993) ................... 20

Flomerfelt v. Cardiello,
    202 N.J. 432, 441 (2010)..................... 10, 11, 26

Gibson v. Callaghan,
    158 N.J. 662 (1999) ................................. 26

Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n,
    793 F. Supp. 259 (D. Or. 1990) ...................... 17

Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.,
    No. 2:12-cv-04418 (WHW) (CLW), 2014 U.S. Dist. LEXIS 165232
    (D.N.J. Nov. 25, 2014)............................... 14

Homesite Ins. Co. v. Hindman,
  413 N.J. Super. 41 (App. Div. 2010)................ 11, 26

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997)........................... 8

Khandelwal v. Zurich Ins. Co.,
  427 N.J. Super. 577 (App. Div.)........................ 9

LeDuc v. J.T. Baker Chemical Co.,
  23 N.J. Super. 28 (App. Div. 1952).................... 10

Longobardi v. Chubb Ins. Co. of N.J.,
  121 N.J. 530 (1990) .................................. 12

Mellin v. N. Sec. Ins. Co.,
  115 A.3d 799 (N.H. 2015)............................. 20

Mem'l Props., LLC v. Zurich Am. Ins. Co.,
  210 N.J. 512 (2012).................................. 10

Motorists Mut. Ins. Co. v. Hardinger,
  131 F. App'x 823 (3d Cir. 2005)...................... 14

N.J. Transit Corp. v. Certain Underwriters at Lloyd's London,
  461 N.J. Super. 440 (App. Div. 2019)................. 27

Nami v. Faulver,
  82 F.3d 63 (3d Cir. 1996)............................. 8

Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014) ............. 15-16, 23

Nunn v. Franklin Mut. Ins. Co.,
  274 N.J. Super. 543 (App. Div. 1994)............... 10-11

Pension Ben. Guaranty Corp. v. White Consolidated Industries,
Inc.,
  998 F.2d 1192 (3rd Cir. 2010)......................... 9

Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.,
  400 F.3d 613 (8th Cir. 2005) ........................ 16

Phila. Parking Auth. v. Fed. Ins. Co.,
  385 F. Supp. 2d 280 (S.D.N.Y. 2005).................. 16

Pittston Co. Ultramar Am. v. Allianz Ins. Co.,
  124 F.3d 508 (3d Cir. 1997) ......................... 12

Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.,
  311 F.3d 226 (3d Cir. 2002)........................ 13-14

Princeton Ins. Co. v. Chunmuang,
   151 N.J. 80 (1997) .................................... 26

Roundabout Theatre Co. v. Cont'l Cas. Co.,
   302 A.D.2d 1 (N.Y. App. Div. 1st Dept. 2002).... 15, 19-20

Schroeder v. State Farm Fire & Cas. Co.,
   770 F. Supp. 558 (D. Nev. 1991) ....................... 28

Simonetti v. Selective Insurance Company of America,
   372 N.J. Super. 421 (App. Div. 2004) ................ 9, 28

Stone v. Royal Insurance Company,
   211 N.J. Super. 246 (App. Div. 1986) .................. 10

TRAVCO Ins. Co. v. Ward,
   715 F. Supp. 2d 699 (E.D. Va. 2010) ................ 16-17

Travelers Indem. Co. v. Dammann & Co.,
   594 F.3d 238 (3d Cir. 2010) ........................... 22

United Airlines, Inc. v. Ins. Co. of State of Pa.,
   385 F. Supp. 2d 343 (S.D.N.Y. 2005) ................... 16

Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n,
   456 N.J. Super. 480 (Super. Ct. 2018) ................. 22

Villa v. Short,
   195 N.J. 15 (2008) .................................... 10

Voorhees v. Preferred Mutual Ins. Co.,
   128 N.J. 165 (1992) .................................... 9

Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.,
   406 N.J. Super. 524 (App. Div. 2009) ............... 17-19

Walker Rogge, Inc. v. Chelsea Title & Guar. Co.,
   116 N.J. 517 (1989) ................................... 11

Wear v. Selective Ins. Co.,
   455 N.J. Super. 440 (App. Div. 2018) ............... 28-29

Weedo v. Stone-E-Brick, Inc.,
   81 N.J. 233 (1979) ................................... 11

Western Fire Ins. Co. v. First Presbyterian Church,
   437 P.2d 52 (Colo. 1968) ........................... 20-21

**Rules**

F.R.C.P. 12(b)(6) .................................. 8, 9, 32

**Other Authorities**

5 Appleman, Insurance Law and Practice § 3083 (1970)..... 27

12 Am. Jur., Contracts § 236 ............................. 10

Couch on Insurance § 167:15 (3rd Ed. 2009) .............. 21

## **PRELIMINARY STATEMENT**

Defendant Norfolk & Dedham issued a policy of business owners insurance to Plaintiff Dezine Six, LLC.  Plaintiff submitted a claim to Norfolk & Dedham for loss of income on account of the Governor's Executive Order mandating closure of all non-essential establishments, including hair and beauty salons, due to risk posed by the COVID-19 pandemic.

Norfolk & Dedham denied the claim and plaintiff filed this Complaint seeking a declaratory judgment that it is entitled to coverage under three distinct provisions of the policy: 1) "Business Income;" 2) "Extra Expense;" and 3) "Civil Authority." Plaintiff invokes federal jurisdiction under 28 U.S.C. Sec. 1332.

While New Jersey law directs courts to resolve policy ambiguities in favor of policyholders, none of the policy terms applicable to the business loss experienced by plaintiff is ambiguous.  Accepting as true all facts pled in the Complaint — essentially, that plaintiff sustained a loss of business due to the closure mandated by an Executive Order based on the public health threat posed by the COVID-19 pandemic - the absence of direct physical loss or damage to property precludes coverage. Additionally, the virus exclusion - in combination with the anti-concurrent causation clause – independently precludes coverage.

1

Norfolk & Dedham therefore moves to dismiss the Complaint for failure to state a claim on the basis that:

(i)   Plaintiff is not entitled to "Business Income" or "Extra Expense" coverage because it did not sustain "direct physical loss" or "damage" to insured property;

(ii)  Plaintiff is not entitled to "Civil Authority" coverage because it did not sustain loss on account of damage to any other property; and

(iii) Coverage is independently barred by the policy's virus exclusion in combination with its anti-concurrent causation clause.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on June 30, 2020.  Defendants now move to dismiss the Complaint pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**STATEMENT OF FACTS**

1.   Defendants Fitchburg Mutual Insurance Company and The Norfolk & Dedham Group ("the defendant Norfolk") issued a Businessowners Policy to Plaintiff Dezine Six, LLC ("the plaintiff"), Policy No. V0300123, with effective dates of December 10, 2019 to December 10, 2020.  (See Complaint, **Exhibit A**.  See also Policy, **Exhibit B**.)

2.   On or about March 19, 2020, the plaintiff filed a claim seeking loss of business income caused by the closure mandated by Governor Murphy's March 16, 2020 Executive Order No. 104 suspending the operation of non-essential businesses on account of the COVID-19 pandemic.  (See **Exhibit A,** paras. 6-7.  See also Exec. Order No. 104 (Mar. 16, 2020, para. 9.)

3.   By letter of March 25, 2020, the defendant Norfolk denied Plaintiff's claim.  (See **Exhibit A** at ¶8.  See also Denial Letter, **Exhibit C**.)

4.   The policy held by the plaintiff contains the BP 00 03 07 13 Businessowners Coverage Form, which provides in relevant part as follows:

**SECTION I – PROPERTY**

**A. Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
> . . . .

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section I - Property.
. . . .

**5. Additional Coverages**
. . . .

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" <u>during the "period of restoration"</u>. <u>The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.</u> With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.
. . . .

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

. . . .

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss or damage to</u> property at the described premises.

The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

. . . .

**i. Civil Authority**

When a Covered Cause of Loss <u>causes damage to property other than property at the described premises</u>, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the <u>damaged property</u> is prohibited by civil authority <u>as a result of the damage</u>, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to <u>dangerous physical conditions</u> resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, <u>or the action is taken to enable a civil authority to have unimpeded access to the damaged property.</u>

. . . .

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly <u>or indirectly</u> by any of the following. <u>Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.</u>

. . . .

6

**j. Virus Or Bacteria**

    **(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

. . .

**H. Property Definitions**

. . . .

  **9.** "Period of restoration":

    **a.** Means the period of time that:

      **(1)** Begins:

        **(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

        **(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

      **(2)** Ends on the earlier of:

        **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        **(b)** The date when business is resumed at a new permanent location.

(See **Exhibit B**, BP 00 03 07 13 Businessowners Coverage Form, pp. 1-2, 6-9, 17-18, 20) (emphasis added).

## LEGAL ARGUMENT

### I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(B)(6)

In ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Nami v. Faulver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Nevertheless, in evaluating a plaintiff's pleadings, the court need not credit a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

According to the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

A pleading that offers only "labels and conclusions," contains "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court to reasonably

infer the defendant is liable for the alleged misconduct. Ashcroft, 556 U.S. at 678 (alteration in original) (citations omitted). Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth. Id. at 678-79.

In adjudicating a motion to dismiss for failure to state a claim, the court may consider documents of undisputed authenticity which are specifically identified in the Complaint and/or publicly available and directly relevant to the claims asserted. Pension Ben. Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3rd Cir. 2010). In this case, such documents are the applicable insurance policy and denial letter to which the Complaint refers.

It is well-settled that the interpretation of an insurance contract is a question of law for the Court to determine and can be resolved in a Motion for Summary Judgment. See Khandelwal v. Zurich Ins. Co., 427 N.J. Super. 577, 585 (App. Div.), certif. denied, 212 N.J. 430 (2012) (citing Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996)). Issues of insurance coverage are questions of law for the Court to decide. See Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 174 (1992); Simonetti v. Selective Insurance Company of America, 372 N.J. Super. 421, 428 (App. Div. 2004).

When interpreting insurance contracts, the intention of the parties must be determined from the language of the policy. Stone v. Royal Insurance Company, 211 N.J. Super. 246, 248 (App. Div. 1986).  When the terms of the contract are clear and unambiguous, the court must enforce the contract as written. Id. at 248.  Words chosen by the contracting parties should not be unnaturally forced beyond their ordinary meaning or "given a curious, hidden sense which nothing by the exigency of a hard case and the ingenuity of a trained and acute mind can discover." LeDuc v. J.T. Baker Chemical Co., 23 N.J. Super. 28, 34–35 (App. Div. 1952) (citing 12 Am. Jur., Contracts, § 236, pp. 758-59).

An insurance policy should be interpreted in accordance with the "'plain and ordinary meaning'" of its terms.  Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). Any ambiguities must be resolved in favor of the insured. Flomerfelt, 202 N.J. at 441.  However, simply because different wording could make a provision clearer does not render it ambiguous.  Villa v. Short, 195 N.J. 15, 26 (2008) (citing Argent v. Brady, 386 N.J. Super. 343, 352 (App. Div. 2006)). Indeed, "the test for determining if an ambiguity exists is whether 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'"  Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super.

543, 548 (App. Div. 1994) (quoting <u>Weedo v. Stone-E-Brick, Inc.</u>, 81 <u>N.J.</u> 233, 247 (1979)).

"[W]hen considering ambiguities and construing a policy, courts cannot 'write for the insured a better policy of insurance than the one purchased.'" <u>Flomerfelt</u>, 202 <u>N.J.</u> at 441 (quoting <u>Walker Rogge, Inc. v. Chelsea Title & Guar. Co.</u>, 116 <u>N.J.</u> 517, 529 (1989)). Moreover, courts must not read one provision such that another provision is rendered meaningless. <u>Homesite Ins. Co. v. Hindman</u>, 413 <u>N.J. Super.</u> 41, 47 (App. Div. 2010).

Applying these principles to the facts alleged in the Complaint and the language of the policy at issue, the Court should dismiss the Complaint for failure to state a legally cognizable claim.

II. **THE PLAINTIFF DID NOT SUSTAIN "DIRECT PHYSICAL LOSS" OR "DAMAGE" TO THE INSURED PREMISES, PRECLUDING BOTH "BUSINESS INCOME" AND "EXTRA EXPENSE" COVERAGE UNDER THE NORFOLK POLICY.**

The Norfolk policy held by the plaintiff expressly limits "Covered Causes of Loss" to "direct physical loss." Additionally, both "Business Income" and "Extra Expense" coverages require that the insured property sustain "direct physical loss" or "damage." Based on facts asserted in the Complaint, the plaintiff does not allege that its property sustained direct physical loss or damage. As such, the plaintiff is not entitled to "Business Income" or "Extra Expense" coverage on account of its closure pursuant to Executive Order.

A basic canon of insurance policy construction provides that in the absence of a policy definition to the contrary, words should be accorded their plain meaning. See, e.g., Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 425-26 (2016) (citations omitted); Pittston Co. Ultramar Am. v. Allianz Ins. Co., 124 F.3d 508, 520 (3d Cir. 1997) (citing Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990)). The terms "direct physical loss" and "damage" – as interpreted by both state and federal courts within the Third Circuit, in New Jersey and throughout the country – do not encompass closure of a business pursuant to an Executive Order that bears no relationship to the specific condition of property.

12

■ **Federal Law**

The Third Circuit has previously noted that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." <u>Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co</u>., 311 <u>F.</u>3d 226, 235 (3d Cir. 2002). In <u>Affiliated FM</u>, the Port Authority of New York and New Jersey filed suit against numerous insurance companies alleging that the cost to remediate asbestos found in numerous buildings, including the World Trade Center complex and Newark International Airport. <u>Id.</u> at 230-31. The District of New Jersey ruled in favor of the insurers and the Port Authority appealed. <u>Id.</u> at 232.

The Third Circuit affirmed. With regard to the meaning of "physical loss or damage," the Third Circuit stated:

> "[P]hysical loss or damage" occurs only if an actual release of asbestos fibers from asbestos-containing materials has resulted in <u>contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable</u>, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility. <u>The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.</u>

<u>Id</u>. at 236.

In this case, the plaintiff's business operations were interrupted by an Executive Order based on the risk of virus

transmission throughout the State of New Jersey. (See **Exhibit C**)  The Executive Order was prompted by a statewide risk of potential future injury which, like the threat of asbestos dispersal in Affiliated FM, lacked "the distinct and demonstrable character necessary for first-party insurance coverage."  In fact, the threat in this case was even further removed from the insured's property because the Governor's Executive Order bore no connection to the plaintiff's property, as might an order from a state or federal agency such as the County Department of Health or OSHA.  Application of the Third Circuit's construction of the phrase "physical loss or damage" in Affiliated FM compels the conclusion that the plaintiff has sustained neither.

In Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., No. 2:12-cv-04418 (WHW) (CLW), 2014 U.S. Dist. LEXIS 165232, at *13 (D.N.J. Nov. 25, 2014) (see **Exhibit E**), this Court construed a policy requiring physical damage and concluded that under New Jersey law, the release of ammonia "*physically transformed the air*" in the insured facility, rendering it "unfit for occupancy *until the ammonia could be dissipated*." Ibid. (emphasis added).

Similarly, in Motorists Mut. Ins. Co. v. Hardinger, 131 F. App'x 823, 826-27 (3d Cir. 2005), the Third Circuit, applying Pennsylvania law, held that there was a genuine issue of material fact as to whether or not the functionality of the

plaintiffs' property was "was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable" due to the presence of e-coli in the water supply which made the homeowner ill.  Ibid. (citing Port Auth. v. Affiliated FM Ins. Co., supra.

In Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323 (S.D.N.Y. 2014), a law firm made a claim for loss of business income and extra expense following Superstorm Sandy.  The law firm alleged that it suffered a "direct physical loss or damage" when its power grid was shut off for several days by the electric company to prevent damage to the grid as flooding took place.  Id. at 329.  The law firm relied on several out-of-state cases which held that noxious gas or fumes constituted direct physical loss, as it rendered the premises "unusable or unsatisfactory for its intended purpose."  Ibid.

The District Court held that the law firm did not suffer "direct physical loss or damage," which "unambiguously[]" requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage".  Id. at 331 (citing Roundabout Theatre Co. v. Cont'l Cas. Co., 302 A.D.2d 1 (N.Y. App. Div. 1st Dept. 2002).  The court stated that it was "unaware of authority supporting[] [plaintiff's] argument that 'direct physical loss or damage' should be read . . . to extend to mere loss of use of a premises, where there has been no physical damage to such premises."  The

court further observed that the definition of "period of restoration" included the words "repair and replace," which "contemplate physical damage to the insured premises as opposed to loss of use of it." Id. at 332.

See also Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co., 400 F.3d 613, 616 (8th Cir. 2005) (direct physical loss or damage cannot be interpreted to apply *whenever* property cannot be used for its intended purpose;" loss of use or function is only relevant in determining the amount of loss, particularly a business interruption loss, after a physical loss or damage is established); United Airlines, Inc. v. Ins. Co. of State of Pa., 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), aff'd, 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier "'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid."); Phila. Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (finding that "'direct physical' modifies both loss and damage," therefore "the interruption in business must be caused by some physical problem with the covered property") (emphasis added); Essex v. BloomSouth Flooring Corp., 562 F.3d 399, 406 (1st Cir. 2009)(an unpleasant odor rendering property unusable constituted physical injury to the property); TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (finding that "direct physical loss" present where the insured

home was "rendered uninhabitable by the toxic gases" released by defective drywall); Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n, 793 F. Supp. 259, 263 (D. Or. 1990) (finding no "direct physical loss" where building's tenants threatened to vacate unless asbestos discovered in insulation was removed because "the building remained physically intact and undamaged").

- ■ **State Law**

New Jersey Courts have arrived at similar definitions of loss compensable under a first party insurance policy. In Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co., 406 N.J. Super. 524 (App. Div. 2009), a large-scale blackout affecting over 50 million people in the Northeastern United States and Eastern Canada caused Wakefern's numerous grocery stores to suffer food spoilage and incur loss of business income. Id. at 529. The power outage was caused by a "combination of fortuitous events, together with the operation of safety features built into the system to insure that the essential elements of the grid would not be severely damaged." Id. at 540.

Wakefern had purchased an endorsement which covered consequential loss or damage resulting from an interruption of electrical power caused by "physical damage" to off-premises electrical grids. Id. at 530. Liberty Mutual denied coverage, noting that the off-premises grids were not physically damaged

but rather were shut off as a safety mechanism.  The trial court agreed and granted Liberty Mutual summary judgment.  Id. at 529.

The Appellate Division reversed, finding the term "physical damage" ambiguous under the precise facts presented.  Id. at 540.  The Appellate Division found that the electrical grid arguably was physically damaged because the grid and its component generators and transmission lines "were *physically* incapable of performing their essential function of providing electricity."  Id. at 540 (emphasis added).  The court noted that the grid was an interconnected system and that "at least in some areas, the power could not be turned back on until assorted individual pieces of *damaged equipmen*t were replaced."  Ibid (emphasis added).

On the other hand, the Wakefern court noted, one could argue – based on the technical analysis in the final report of the joint U.S.-Canadian task force created to investigate the blackout – that there was no physical damage.  Id. at 542.  As such, given that the term "physical damage" was capable of two interpretations under the unique facts of the case, the court concluded that it was ambiguous.  The court also looked to the "larger picture concerning the loss of *function* of the system as a whole."  Id. at 540 (emphasis added).

This is not a case in which reasonable minds could differ over whether the plaintiff sustained physical loss or damage. In fact, presumably in its effort to avoid application of the

virus exclusion (discussed at Point IV below), the Complaint is silent on whether or not SARS-CoV-2 virus was found on its property. (See **Exhibit B**, p. 20)  "Physical loss" or "physical damage" could be found in this case only by ignoring the word "physical," both in the "Covered Causes of Loss" definition and in all three of the policy provisions under which Plaintiff seeks coverage. Indeed, the business was not closed down because virus was present; rather, it was closed down due to the threat of transmission of the virus.

State courts beyond New Jersey have reached similar conclusions.  In Roundabout Theatre, supra, a New York City theater company was forced to cancel scheduled performances of "Cabaret" when its theater was rendered inaccessible to the public for several weeks by a municipal order closing the street for safety reasons—namely, a construction accident at a neighboring building which caused no damage to the theater. Roundabout Theatre Co., 302 A.D.2d at 2-3.  The theater company submitted a claim for loss of business income, which the policy predicated on "'direct physical loss or damage' to the insured's property.  Id. at 4.  The carrier denied coverage since there was no physical damage to the theater.  Ibid.  The theater company filed suit and obtained summary judgment based on the lower court's determination that "'loss of, damage to, or destruction of [the insured's] property or facilities' encompasses a 'loss of use' of the property."  Id. at 5.

The Appellate Division reversed, reasoning that "the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property." Id. at 7. The court expressly rejected the lower court's holding that the phrase "loss of" encompasses "loss of use of" the insured premises without physical damage to the insured's property. Id. at 7-8.

See also, e.g., Mellin v. N. Sec. Ins. Co., 115 A.3d 799, 805 (N.H. 2015) ("[W]e hold that physical loss may include not only tangible changes to the insured property, but also changes that are perceived by the sense of smell and that exist in the absence of structural damage. These changes, however, must be distinct and demonstrable") (emphasis added); AFLAC Inc. v. Chubb & Sons, Inc., 581 S.E.2d 317, 319 (Ga. Ct. App. 2003) (defining "direct physical loss" as "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."); Farmers Ins. Co. of Or. v. Trutanich, 858 P.2d 1332, 1335 (Or. Ct. App. 1993) (pervasive odor caused by neighbor "cooking" methamphetamine was "direct physical loss" because odor "infiltrated" the house which constituted damage); Western Fire Ins. Co. v. First Presbyterian Church, 437 P.2d 52, 54-56 (Colo. 1968) (finding that saturation of a church with gasoline vapors constituted a "direct physical

loss" when the building could no longer be occupied or used but noting that the "so-called 'loss of use' of the church premises, standing alone, does not in and of itself constitute a 'direct physical loss.'").

Also see Couch on Insurance § 167:15 (3rd Ed. 2009) ("[B]usiness interruption policies generally require some physical damage to the insured's business in order to invoke coverage.")

The common theme of state and federal court's construction of the terms "physical loss" and "damage" is that both require some physical change to the property to trigger coverage. In this case, a condition precedent to both the "Business Income" and "Extra Expense" coverages is that the insured property sustain "direct physical loss [] or damage."  The Complaint alleges no facts sufficient to establish either.

Presumably the plaintiff will argue that while its property was not physically damaged, it sustained a "physical loss" by operation of the Governor's Executive Order. For the reasons discussed above, plaintiff's loss of use of its property, in and of itself, does not constitute a "direct physical loss" and therefore is not a "Covered Cause of Loss" as defined by the policy.

Essentially plaintiff seeks to blur the line between cause and effect, attempting to substitute the loss of use of the insured property – which is the *effect* of the Executive Order

21

closing non-essential businesses – for a covered _cause_ of loss: namely, direct physical loss to the property.

It is a fundamental canon of contractual interpretation that in the face of competing interpretations of contract terms, when one interpretation would render a word or phrase superfluous and another would give it meaning, the latter interpretation prevails.  Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n, 456 N.J. Super. 480, 494 (Super. Ct. 2018). And see Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 255 (3d Cir. 2010) ("We must also endeavor to avoid ignoring certain words or reading the contract in such a way as to make any words 'meaningless.'") (citing Cumberland Cty. Improvement Auth. v. GSP Recycling Co., Inc., 358 N.J. Super. 484, 497 (App. Div. 2003)).

The plain meaning of "direct physical loss of or damage to" the insured property, as interpreted by the federal and state authorities cited above, bars disregard of the word "physical" and requires some actual physical change in the insured property.  While the change need not be structural, it must be physical.

In this case the facts alleged in the Complaint fail as a matter of law to establish direct physical loss of, or damage to, any property.  As such, the plaintiff is not entitled to coverage under either the "Business Income" or "Extra Expense" provisions of the Norfolk policy.

This conclusion finds additional support within the measure of compensation available under the "Business Income" and "Extra Expense" coverages. The period of compensation articulated under both coverages, like that in Newman Myers, supra, is limited to the "period of restoration." Compare Newman Myers Kreines Gross, P.C., 17 F. Supp. 3d at 332 with **Exhibit B**. As in Newman Myers, the Norfolk policy defines the "period of restoration" as the period when the property could be "repaired, rebuilt or replaced." Ibid.; **Exhibit B**) Acceptance of the expansive definition of loss urged by the plaintiff would not only read the word "physical" out of the policy; it would render nonsensical the measure of compensation to which an insured who sustains direct physical loss or damage is entitled.

For the foregoing reasons, the defendant Norfolk correctly denied plaintiff's claim for coverage under the "Business Income" and "Extra Expense" provisions of the policy.

### III. THE PLAINTIFF DID NOT SUSTAIN LOSS AS A CONSEQUENCE OF DAMAGE TO ANY PROPERTY, INCLUDING ANY PROPERTY OTHER THAN PROPERTY AT THE DESCRIBED PREMISES, PRECLUDING "CIVIL AUTHORITY" COVERAGE UNDER THE NORFOLK POLICY

The "Civil Authority" provision states, in relevant part, as follows:

**i. Civil Authority**

When a Covered Cause of Loss *causes damage to property other than property at the described premises*, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the *damaged property* is prohibited by civil authority as a result of the damage, and <u>the described premises are within that area but are not more than one mile from the damaged property</u>; and

**(2)** The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, *or the action is taken to enable a civil authority to have unimpeded access to the damaged property.*

(See **Exhibit A**, BP 00 03 07 13 Form at p. 9.)

Preliminarily, the sole "Covered Cause of Loss" expressly defined in the Norfolk policy is "direct physical loss." As discussed at Point II with respect to the "Business Income" and "Additional Expense" provisions, acceptance of plaintiff's coverage position would contravene state and federal law by essentially reading the word "physical" out of the policy.

There must be physical loss, which the facts recited in the Complaint fail to establish.

Secondly, while the Governor of the State of New Jersey certainly qualifies as a "civil authority," the Complaint does not describe damage to any property, let alone "property other than the property at the described premises," within a one mile radius of plaintiff's insured property. The Executive Order suspending the operation of non-essential businesses was not issued "in response to dangerous *physical* conditions" at the plaintiff's building or any other property within a one-mile radius.

Finally, the closure of all non-essential businesses was not effectuated to allow unimpeded access by any civil authority to any particular property within a one-mile radius of plaintiff's property.

In short, the "Civil Authority" provision plainly applies only to instances of physical damage to a neighboring property when access to the area is restricted due to the dangerous physical condition of the *neighboring property and/or* to allow the authorities access to it. The plain language of the "Civil Authority" provision renders it inapplicable to plaintiff's alleged loss.

IV.   **THE VIRUS EXCLUSION INDEPENDENTLY BARS COVERAGE BECAUSE THE PLAINTIFF'S LOSS WAS CAUSED AT LEAST INDIRECTLY BY A VIRUS AND IS NOT AGAINST PUBLIC POLICY.**

The Norfolk virus exclusion and the dispositive "anti-concurrent causation" preamble which precedes it provide as follows:

**C. Exclusions**

**1.** We will not pay for loss or damage caused directly <u>or indirectly</u> by any of the following. <u>Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.</u>
• . . . .

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

While exclusionary clauses "must be construed narrowly . . . [and] the burden is on the insurer to bring the case within the exclusion," <u>Gibson v. Callaghan</u>, 158 <u>N.J.</u> 662, 671 (1999) (quoting <u>Am. Motorists Ins. Co. v. L-C-A Sales Co.</u>, 155 <u>N.J.</u> 29, 41 (1998)), "exclusionary provisions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." <u>Homesite</u>, 413 <u>N.J. Super.</u> at 46 (citing <u>Princeton Ins. Co. v. Chunmuang</u>, 151 <u>N.J.</u> 80, 95 (1997)). <u>See also</u> <u>Flomerfelt</u>, 202 <u>N.J.</u> at 448 (citations omitted).

26

At common law, whether a loss that involves two causes — one covered and one excluded — triggers coverage under a liability and casualty policy is traditionally determined by the "efficient proximate cause" doctrine.  The most frequently cited explanation of this doctrine is found in 5 Appleman, Insurance Law and Practice § 3083 at 309-311 (1970)[1], which provides in relevant part:

> Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produced the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominant cause which sets into motion the chain of events producing the loss. An incidental peril outside the policy, contributing to the risk insured against, will not defeat recovery. . . . In other words, it has been held that recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.

In the often-cited decision of Assurance Co. of Am., Inc. v. Jay-Mar, Inc., 38 F. Supp. 2d 349 (D.N.J. 1999), the District Court noted that under the common law "efficient proximate cause" doctrine, a loss is covered so long as an insured cause of loss is the first link in a chain of causation that leads to

---

[1]  For this reason, the efficient proximate cause doctrine is sometimes referred to as "Appleman's Rule." See, e.g., N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 460 (App. Div. 2019) (citations omitted).

a loss.  Id. at 353.  See also Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558, 561 (D. Nev. 1991) (stating that the efficient proximate cause doctrine "provides that when a loss is sustained by a sequence or concurrence of at least two causes, one covered under the policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed.  Thus, if the 'first' cause is covered, the loss is covered even if an uncovered loss is involved in the chain of events.")

In New Jersey, however, anti-concurrent causation ("ACC") clauses effectively supersede the "efficient proximate cause" approach by excluding coverage of any loss to which an excluded cause contributes – even where the final cause in the sequential link is covered.

The Jay-Mar court held that:

New Jersey would follow the majority rule regarding loss due to sequential causes: there is no violation of public policy when parties to an insurance contract agree that there will be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss.

38 F. Supp. 2d at 354.

The Appellate Division cited Jay-Mar in dicta in the published decision of Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004).  More recently, the Appellate Division cited Simonetti in a published decision declaring that ACC clauses are enforceable.  See Wear v. Selective Ins. Co.,

455 <u>N.J. Super.</u> 440, 454 (App. Div. 2018)("In a situation where 'two or more identifiable causes – one a covered event and one excluded – may contribute to a single property loss,' there is coverage *absent an anti-concurrent or anti-sequential clause in the policy*.")(emphasis added)

In this case, the exclusions within the Norfolk policy begin with a prominent and unambiguous ACC clause. The defendant Norfolk therefore properly denied plaintiff's claim not only because plaintiff was not entitled to coverage under either of the "Business Loss," "Extra Expense" or "Civil Authority" provisions, but also because the "virus exclusion," in conjunction with the ACC preamble, expressly excludes coverage of an otherwise covered loss that is related directly or indirectly to a virus.

The preamble to the exclusions in the Norfolk policy states that loss or damage caused "directly *or indirectly*" by any of the exclusions that follow will be excluded from coverage. (<u>See</u> **Exhibit B**) This is so "whether or not the loss event results in widespread damage or affects a substantial area." (<u>Ibid.</u>)

The exclusion explicitly and expressly covers any virus "that induces *or is capable of inducing* physical distress, illness or disease." (<u>See</u> **Exhibit B**) The emphasized language obviates any requirement that the virus be physically present within the insured premises. The virus need only be capable of inducing physical distress, illness, or disease. (<u>See</u> **Exhibit**

29

**B**) (Notably, this position expressly contradicts plaintiff's very argument for coverage regarding "direct physical loss [] or damage": it is precisely because there was no SARS-CoV-2 found on the insured property or any other property within one mile that there was no direct physical loss or damage sustained.)

Finally, the contention in the Complaint that the virus exclusion does not apply because it is void as against public policy is without merit. Not only does it not violate any statute or ordinance, the plaintiff itself bargained for same by entering into the contract with the defendant Fitchburg. Thus, even if the Executive Order which prompted the closure of plaintiff's business were sufficient to entitle plaintiff to coverage under the "Business Income," "Extra Expense," or "Civil Authority" provision, application of the virus exclusion, in conjunction with the ACC preamble, would separately and independently exclude plaintiff's claims from coverage. Similarly, and most importantly, since the plaintiff has failed to establish coverage under the "Business Income," "Extra Expense," or "Civil Authority" provisions of the policy, the Court need not address the public policy argument raised by plaintiff.

In short, coverage under the policy is provided for actual loss of business income sustained while operations are suspended, and the suspension must be caused by the direct

30

physical loss of or damage to property. Further, **direct physical loss of or damage to the property** must be something with material, something that alters the physical integrity of the property. The Complaint does not allege any physical loss of or damage to the beauty salon. Rather, it claims loss of business due to the Executive Order shutting down non-essential businesses due to the global COVID-19 pandemic. The clear and unambiguous virus exclusion would still apply even if direct physical loss or damage had been established. This is true, too, if the Civil Authority provision applied in this instance. Finally, the within matter amounts to no more than a loss of access to the premises, not physical damage to property, which caused plaintiff's damages. To that end, there is simply no coverage.

## CONCLUSION

For the foregoing reasons, defendants Fitchburg Mutual Insurance Company and The Norfolk & Dedham Group request an Order dismissing the Complaint for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6).

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Defendants

By:_____
        Gina M. Stanziale

DATED: July 28, 2020

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEZINE SIX, LLC T/A COSMO BLEU<br><br>      Plaintiff,<br><br>V.<br><br>FITCHBURG MUTUAL INSURANCE COMPANY AND THE NORFOLK & DEDHAM GROUP<br><br>      Defendants. | CIVIL ACTION NO.: 3:20-CV-07964<br><br><br>**ORDER DISMISSING THE COMPLAINT FOR FAILURE TO STATE A CLAIM** |

**THIS MATTER** having been brought before the Court on the Motion of Methfessel & Werbel, P.C., attorneys for defendants Fitchburg Mutual Insurance Company and The Norfolk & Dedham Group, on notice to all counsel of record, for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6), and the Court having considered the matter and for good cause shown;

**IT IS** on this          day of                    ;

**ORDERED** that defendants Fitchburg Mutual Insurance company and The Norfolk & Dedham Group's Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6) be and is hereby granted; and it is further

**ORDERED** that the Complaint be and is hereby dismissed with prejudice; and it is further

**ORDERED** that a copy of this Order be served on all counsel within        days of the date hereof.


_____
                                                        U.S.D.J.

(   ) Opposed
(   ) Unopposed

Our File No.  89297

## CERTIFICATE OF MAILING

The undersigned hereby certifies as follows:

1.  I am employed by the law firm of Methfessel & Werbel.

2.  On July 28, 2020 the undersigned prepared and forwarded copies of the within correspondence to the following parties:

> **VIA ECOURTS**
> Clerk, United States District Court - Trenton
> Clarkson S. Fisher Fed. Bldg.
> 402 East State Street
> Trenton, NJ 08608
>
> **VIA ECOURTS**
> Gregory S. Spizer, Esq.
> Anapolweiss
> One Logan Square
> 130 North 18th Street, Suite 1600
> Philadelphia, PA 19103

3.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Jillian Pizzo