<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEZINE SIX, LLC D/B/A, COSMO BLEU : : : Plaintiff, : v. : : : FITCHBURG MUTUAL INSURANCE : COMPANY; AND : THE NORFOLK & DEDHAM GROUP : : Defendants. : : | Case No. 3:20-cv-07964-BRM-DEA **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Fitchburg Mutual Insurance Company ("Fitchburg Mutual") and The Norfolk & Dedham Group ("N&D") (together with Fitchburg Mutual, "Defendants") seeking to dismiss Plaintiff Dezine Six, LLC's ("Dezine") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) Dezine opposed the Motion to Dismiss. (ECF No. 8.) Defendants filed a Reply. (ECF No. 10.) Dezine filed a Sur-Reply in opposition to the Motion to Dismiss. (ECF No. 14.) Defendants responded to Dezine's Sur-Reply. (ECF No. 15.) Dezine submitted a Notice of Supplemental Authorities. (ECF No. 21.) Fitchburg Mutual submitted a Supplemental Brief in further support of its Motion to Dismiss. (ECF No. 22.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED.**

**I.       BACKGROUND**

This is one of a series of decisions involving an insurance company declining coverage for an insured's claim that stems from the government shutdown orders issued in response to the COVID-19 pandemic. The insured claims business losses as a result of the shutdown orders, and the insurance carrier invokes certain exclusion provisions in the insurance policy to decline coverage for such losses.

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Dezine owns and operates a hair and beauty salon in Princeton, New Jersey. (ECF No. 1 at ¶ 1.) Defendants issued an insurance policy (the "Policy") to Dezine, during the policy period of December 10, 2019, through December 10, 2020. (*Id*. at ¶ 20.) The Policy provides coverage for all nonexcluded business losses that Dezine sustained at its salon at 170 Nassau Street, Princeton, New Jersey (the "Covered Property"). (*Id*. at ¶¶ 3, 19.) The Policy covers "physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (ECF No. 1-1 at 16, § I.A.) Covered Causes of Loss means "direct physical loss unless the loss is excluded or limited" by the Policy. (*Id*. at 17, § I.A.3.) In addition, the Policy contains: (1) a "Business Income" provision, which covers the actual loss of Dezine's Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by "direct physical loss or damage" to the Covered Property, and such "loss or damage must be caused

by or result from a Covered Cause of Loss" (*id*. at 21–22, § I.A.5.f(1)); (2) an "Extra Expense" provision, which covers Dezine's expenses to avoid/minimize the suspension of business, continue operations, and repair/replace property, where such expenses would not have been incurred but for the "direct physical loss or damage to" the Covered Property "caused by or result from a Covered Cause of Loss" (*id*. at 23, § I.A.5.g); and (3) a "Civil Authority" provision, which covers "the actual loss of Business Income" and "necessary Extra Expense caused by action of civil authority that prohibits access to" the Covered Property:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, . . . provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*id*. at 24, § I.A.5.i). Also, the Policy contains a coverage exclusion for viruses (the "Virus Exclusion") which provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
> . . .
> j. Virus Or Bacteria
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id*. at 32, 35, § I.B.1.)

On or about March 19, 2020, Dezine was forced to suspend or reduce business operations in response to orders by state and local authorities mandating the closure of all non-life sustaining

3

businesses in the State of New Jersey in an effort to protect the public from the COVID-19 pandemic. (ECF No. 1 at ¶ 6.) Dezine made a claim for business interruption, civil authority and/or extra expense coverage to recoup substantial, ongoing financial losses directly attributed to a series of COVID-19 closure orders. (*Id*. at ¶ 7.) By letter dated March 25, 2020, N&D denied Dezine's claim. (ECF No. 1-2.)

On June 30, 2020, Dezine filed a Complaint seeking a declaratory judgment that it is entitled to coverage under the Business Income, the Extra Expense, and the Civil Authority provisions, and requesting payments from Defendants under these provisions. (ECF No. 1.) On July 28, 2020, Defendants filed a Motion to Dismiss Dezine's Complaint pursuant to Rule 12(b)(6). (ECF No. 5.) On August 19, 2020, Dezine opposed Defendants' Motion to Dismiss. (ECF No. 8.) On September 1, 2020, Defendants filed a Reply. (ECF No. 10.) On September 8, 2020, Dezine filed a Sur-Reply in opposition to Defendants' Motion to Dismiss. (ECF No. 14.) On September 10, 2020, Defendants responded to Dezine's Sur-Reply. (ECF No. 15.) On December 15, 2020, Dezine submitted a Notice of Supplemental Authorities (ECF No. 21), and Fitchburg Mutual submitted a Supplemental Brief in further support of its Motion to Dismiss (ECF No. 22).

**II.    LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

4

of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuylkill Energy*

*Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (citing *Shaw*, 82 F.3d at 1220).

### III.  DECISION

#### A.  The Business Income Coverage Is Not Illusory

Dezine argues the coverage under the Business Income provision for "continuing normal operating expenses" sustained "due to the necessary suspension" is nonsensical, because (1) the continuing expenses, such as monthly rent, will be owed despite a suspension of operations, and (2) the coverage for operating expenses would be illusory if enforced as written. (ECF No. 8 at 18.) The Court disagrees.

"The Court must 'decline to construe the Policy in a manner that makes promises in the coverage section illusory.'" *Childrens Place, Inc. v. Great Am. Ins. Co.*, No. 18-11963, 2019 U.S. Dist. LEXIS 70109, at *14 (D.N.J. April 25, 2019) (citing *Customized Distrib. Servs. v. Zurich Ins. Co.*, 862 A.2d 560, 568 (N.J. Super. Ct. App. Div. 2004)). Here, the plain language of the Business Income provision does not limit the continuing expenses to monthly rent, which Dezine allegedly has to pay at the same rate after the suspension of its operations. The Court does not discern, and Dezine does not allege, any basis that suggests the continuing expenses for Dezine cannot change

6

or increase because of a suspension of its business. Therefore, the Court cannot conclude the coverage for operating expenses is necessarily illusory. Moreover, the language of the Business Income provision is unambiguous, and must be enforced as written.

"[T]he contractual language is unambiguous" when it is "subject to only one reasonable interpretation." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (citing *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "It is only when language is susceptible to more than one reasonable interpretation that extrinsic evidence should be considered as an interpretative aid." *YA Global Investments, L.P. v. Cliff*, 15 A.3d 857, 864 (N.J. Super. Ct. App. Div. 2011) (citing *Deerhurst Estates v. Meadow Homes, Inc.*, 165 A.2d 543, 551 (N.J. Super. Ct. App. Div. 1960)). "Otherwise, semantics should not be allowed to 'twist and distort' the obvious meanings of contractual terms." *Id.* (citing *Conway v. 287 Corporate Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006)).

Here, the Business Income provision is subject to only one reasonable interpretation in determining the actual business income loss. "[T]he appropriate formula for 'actual loss of business income' under the contract is: net income that should have been earned or incurred plus continuing normal operating expenses (including payroll) minus gross profits actually earned." *Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, No. 3:05-CV-00143 ECR (VPC), 2006 U.S. Dist. LEXIS 103077, at *16–17 (D. Nev. Sept. 26, 2006) (finding a same business income coverage provision unambiguous). Otherwise, if "one were to calculate 'actual loss of business income' by subtracting net income actually earned or incurred from projected net income and continuing normal operating expenses, the insurer would, in effect, be required to pay twice for continuing operating expenses." *Id.* at *15. "Double compensation for continued operating expenses would reimburse the insured for more than its 'actual loss.'" *Id.* at *16. In conclusion, the Business

7

Income provision is unambiguous and enforceable.

### B. The Virus Exclusion Denies Dezine Recovery Under the Policy

#### 1. The Virus Exclusion Denies Dezien Recovery under the Business Income, the Civil Authority, and the Extra Expense Provisions

Defendants contend the Virus Exclusion, with the anti-concurrent causation language in its preamble, expressly excludes coverage of an otherwise covered loss that is related directly or indirectly to a virus. (ECF No. 5 at 38.) As a result, Defendants claim to have properly denied Dezine's insurance claim. (*Id*.) Dezine points out the Business Income, the Civil Authority, and the Extra Expense provisions specifically refer to recovery under the Policy for "expenses" as distinct from loss of income (ECF No. 8 at 18), and the Virus Exclusion only excludes coverage for "loss or damage" but not "expense" (*id*. at 21). Dezine argues, throughout the Policy, "loss," "damage," and "expense" are treated as separate items. (*Id*. at 19). As a result, Dezine maintains the Virus Exclusion does not apply to the expenses incurred and covered under the Policy due to the suspension of its business. (*Id*. at 21). The Court disagrees.

The Virus Exclusion can exclude coverage for "expenses." First, because the Policy uses the term "loss" without defining it, the Court "must apply the plain and ordinary meaning of that term." *Estate of Keppel v. Angela's Angels Home Healthcare*, No. A-3868-17T1, 2019 N.J. Super. Unpub. LEXIS 1068, at *4–5 (N.J. Super. Ct. App. Div. May 9, 2019). "This common-sense approach often begins with an examination of dictionary definitions." *Cypress Point Condo. Ass'n, Inc.*, 143 A.3d 273, 286 (N.J. 2016); *see also Empire Fire & Marine Ins. Co. v. Intek Auto Leasing, Inc.*, No. 17-4525, 2019 U.S. Dist. LEXIS 223782, at *29 (D.N.J. Dec. 18, 2019) (citations omitted) ("Courts often use dictionary definitions to determine a word's meaning when the policy does not otherwise define it."); *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 360 (3d Cir. 2014) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006)) ("We look

to the dictionary definition . . . for 'assistance in determining the plain meaning' of [an] undefined term."). The word "loss" (1) means the "amount of financial detriment caused by . . . an insured property's damage" in the insurance context, and (2) more generally "refers to an 'undesirable outcome of a risk' or an 'amount of money lost by a business or organization.'" *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 2:20-cv-03376-JDW, 2020 U.S. Dist. LEXIS 228859, at *8 (E.D. Pa. Dec. 7, 2020) (citing Black's Law Dictionary 1087 (10th ed. 2009); New Oxford American Dictionary 1033 (3d ed. 2010)). Accordingly, the expenses that Dezine sustained due to a suspension of its business fall within these definitions of "loss." Second, the Policy's structure suggests "expense" can be a part of "loss." As Dezine concedes, the coverage under the Business Income provision includes "actual loss of 'continuing normal operating expenses.'" (ECF No. 8 at 17.) Since continuing normal operating expense is a component of Business Income (ECF No. 1-1 at § I.A.5.f(1)(c)(ii)), the "actual loss of Business Income" covered by the provision should incorporate operating expenses. Therefore, the Virus Exclusion can exclude coverage under the Business Income, the Civil Authority, and the Extra Expense provisions to the fullest extent. This conclusion is consistent with other New Jersey courts that find a virus exclusion, which precludes coverage for "loss or damage caused directly or indirectly by" a virus, denies the insured's recovery under the business income, the extra expense, and the civil authority provisions that refer to recovery for "expense." *See, e.g., Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 N.J. Super. Unpub. LEXIS 2244, at *6–9, 11, 20 (N.J. Super. Ct. Law Div. Nov. 5, 2020); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, No. 20-05289, 2020 U.S. Dist. LEXIS 206972, at *3, 14 (D.N.J. Nov. 5, 2020).

The Virus Exclusion excludes from coverage any loss or damage "caused directly or indirectly by . . . any virus . . . that induces or is capable of inducing physical distress, illness or

disease." (ECF No. 1-1 at 35, § I.B.1.j(1).) An anti-concurrent/anti-sequential clause provides such an exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.* at 32, § I.B.1.) Since COVID-19 is an "undisputed cause[] of loss" of Dezine's loss and damage of the Covered Property, and is "the subject of an exclusion," the Virus Exclusion with its anti-concurrent/anti-sequential clause denies Dezine any recovery under the Policy. *Lam Inv. Research, LLC v. Public Serv. Mut. Ins. Co.*, No. 12-5576, 2016 U.S. Dist. LEXIS 45116, at *13 (D.N.J. April 1, 2016) (citing *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, No. A-1647-13T4, 2015 N.J. Super. Unpub. LEXIS 107, 2015 WL 248490, at *5 (N.J. Super. Ct. App. Div. Jan. 20, 2015)); *see also New Jersey Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (citing *Simonetti v. Selective Ins.*, 859 A.2d 694, 700 (N.J. Super. Ct. App. Div. 2004)) ("An anti-concurrent causation or anti-sequential causation clause will 'exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured.'").

Courts in New Jersey have denied, at the motion to dismiss stage, an insured's claim for coverage under the same business income, civil authority, and extra expense coverage provisions, because of a same virus exclusion provision. *See Mac Prop.*, 2020 N.J. Super. Unpub. LEXIS 2244, at *20 ("It therefore does not matter whether . . . civil authority coverage can be triggered, since the reason for the exercise of that civil authority was the virus."); *N&S Rest.*, 2020 U.S. Dist. LEXIS 206972, at *14 ("Because the Virus Exclusion bars coverage, Plaintiff is not entitled to coverage under the Business Income, Extra Expense, or Civil Authority provisions."). Accordingly, the Court finds the Virus Exclusion unambiguously precludes Dezine's recovery under the Business Income, the Civil Authority, and the Extra Expense provisions. Whether or not Dezine sustained direct physical loss or damage is irrelevant. *See Mac Prop.*, 2020 N.J. Super.

Unpub. LEXIS 2244, at *20 ("It therefore does not matter whether the closure of plaintiff's business as a result of governmental orders to prevent the spread of the coronavirus constitutes direct physical damage to covered property . . . since the reason for the exercise of that civil authority was the virus."); *N&S Rest.*, 2020 U.S. Dist. LEXIS 206972, at *7–8 ("[T]he Court finds it unnecessary to decide whether Plaintiff's claim resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage."); *c.f. Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20, 2020 N.J. Super. Unpub. LEXIS 1782, at *8, 27–28 (N.J. Super. Ct. Law Div. Aug. 13, 2020) (denying the defendant insurance carrier's motion to dismiss and allowing the plaintiff to prove "the event of the Covid-19 closure may be a covered event," because of plaintiff's argument "that physical damage occurs where a policy holder loses functionality of their property and by operation of civil authority such as the entry of an executive order results in a change to the property," when the parties agree the virus exclusion "would not apply to this case").

### 2. The Doctrine of Regulatory Estoppel Does Not Invalidate the Virus Exclusion

Dezine alleges Fitchburg made material misrepresentations to both New Jersey insurance regulators and its insureds, which estops Defendants from enforcing the Virus Exclusion. (ECF No. 8 at 22.) Dezine claims the insurance industry groups, alerted by an earlier virus borne epidemic, drafted clauses to exclude coverage for losses caused directly or indirectly by a virus. (*Id*. at 27.) Dezine contends the industry inaccurately and misleadingly represented the virus exclusion as a mere clarification of the policy, stating there was no such coverage under the existing policies. (*Id*.) Defendants counter the alleged representation is not misleading but insightful: the insurance carriers foresaw attempts by the insureds to make claims involving disease-causing agents for loss of business income, despite not having undergone "direct physical

11

loss of or damage to" property; and such claims are not supported under New Jersey law. (ECF No. 10 at 19–20.) Defendants also argue, because the language of the Virus Exclusion is not ambiguous, Dezine cannot rely on extrinsic evidence, such as Defendants' alleged misrepresentation, to interpret the Virus Exclusion. (ECF No. 15 at 2–3.) The Court finds the doctrine of regulatory estoppel does not apply here.

The estoppel doctrine that "an insurer who misrepresents the coverage of, or the exclusions from, an insurance contract to the insured's detriment may be estopped from denying coverage on a risk not covered by the policy" applies in a regulatory context. *Morton Int'l v. General Accident Ins. Co.*, 629 A.2d 831, 873 (N.J. 1993). This is because "[a] basic role of the Commissioner of Insurance is 'to protect the interests of policy holders' and to assure that 'insurance companies provide reasonable, equitable and fair treatment to the insuring public.'" *Id.* at 874 (citing *In re N.J.A.C. 11:1-20*, 505 A.2d 177, 180 (N.J. Super. Ct. App. Div. 1986)).

Here, Dezine has not alleged a misrepresentation by Defendants with regard to the Virus Exclusion. Defendants' alleged representation—that the Virus Exclusion would not change the scope of insurance coverage and was only a clarification of the coverage—was made in 2006. (ECF No. 1 at ¶¶ 82–83.) The Court does not discern, and Dezine does not present, any New Jersey legal authority by 2006 stating the inability to use property for its intended use caused by a disease-causing agent constituted "physical loss or damage to such property." Notably, the "consideration of whether a state government order, which required partial closure of businesses, constitutes 'loss or damage caused directly or indirectly' by a virus" "presents novel and important issues of state insurance law" in New Jersey. *Marc Daniel Hospitality, LLC v. AmGuard Ins. Co.*, No. 20-6772, 2020 U.S. Dist. LEXIS 191956, at *12–13 (D.N.J. Oct. 16, 2020); *see also Optical Servs.*, 2020 N.J. Super. Unpub. LEXIS 1782, at *8, 27–28 (viewing the plaintiff's argument that "physical

12

damage occurs where a policy holder loses functionality of their property and by operation of civil authority such as the entry of an executive order results in a change to the property" as "a novel theory of insurance coverage"). This suggests, until *Marc Daniel* and *Optical* were decided in 2020, New Jersey has not recognized that the shutdown of an insured business property during a pandemic constitutes a physical damage that warrants insurance coverage. Therefore, Dezine has not alleged that Defendant made a misrepresentation to New Jersey insurance regulators in applying to approve the Virus Exclusion. As a result, the doctrine of regulatory estoppel is not triggered here.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** on all counts. An appropriate order will follow.

**Date: March 25, 2021**                               */s/ Brian R. Martinotti*
                                                                                           **HON. BRIAN R. MARTINOTTI**
                                                                                           UNITED STATES DISTRICT JUDGE